(984 P.2d 146)

No. 80,194

MID-WEST PAINTING, INC., *Appellee,* v. STATE OF KANSAS EMPLOYMENT SECURITY BOARD OF REVIEW, DONALD A. PIERCE, and LARRY G. ROSS, *Appellants.*

Opinion filed July 2, 1999.

*Joseph W. Moreland* and *Mark A. Kistler*, of Blake & Uhlig, P.A., of Kansas City, for appellants Donald A. Pierce and Larry G. Ross.

*Boyd A. Byers*, of Foulston & Siefkin, L.L.P., of Wichita, for appellee.

Before MARQUARDT, P.J., PIERRON, J., and GLENN D. SCHIFFNER, District Judge, assigned.

PIERRON, J.: Donald Pierce and Larry Ross are painters. They worked for Mid-West Painting, Inc., (Mid-West) until June 10, 1996. The terms and conditions of their employment had been governed by the provisions of a collective bargaining agreement with a union which expired on May 31, 1996. On March 26, 1996, the union gave notice to Mid-West they wanted to make changes in the agreement. Midwest rejected the union's proposal. The contract expired on May 31, 1996, and the union asked its members to remain working while they attempted to get Mid-West to negotiate.

After the union filed a petition for certification of representation and an unfair labor practice charge with the National Labor Relations Board (NLRB), Mid-West informed the union no further meetings about an agreement were necessary. After the NLRB refused to issue a complaint because of insufficient evidence, the union instructed its members to stop working at Mid-West beginning June 11, 1996.

From June 1 to June 10, Ross and Pierce were paid the same hourly wages and worked the same hours as before. After June 10, 1996, Ross and Pierce did not return to work at Mid-West and did not give notice to Mid-West. Mid-West advised them if they did not return to work, it would assume they had quit. Both Ross and Pierce knew Mid-West still had work available for them, but without the union contract. They did not return.

Ross and Pierce filed a claim for unemployment benefits. Their reasons for leaving Mid-West were that the union advised them to leave and that Mid-West was no longer a signatory contractor. The examiner denied their claim, finding they had quit voluntarily without good cause attributable to the employer. Ross and Pierce appealed to the referee on the basis of K.S.A. 1998 Supp. 44-706(a)(10).

Ross testified at his hearing that his reason for quitting was to seek other union employment. The referee asked Ross what Mid-West had modified during his course of employment. He responded the pension payment was the only thing. At Pierce's hearing, the union representative testified Mid-West paid $1.35 per hour into a union pension fund. Mid-West quit making the pension payments at the expiration of the union agreement. It was allegedly unlawful to make such payments unless a signatory contract with the union was in effect.

Pierce testified Mid-West quit paying the pension benefit after May 31. Pierce testified he quit because the benefit was not being paid and to seek another union job. The referee asked Pierce whether he would have continued working if Mid-West had continued making the pension payment but was not a union shop. Pierce responded, "[I]t would had to have still been a union shop." Immediately after this response, Pierce reiterated three more times he would have stayed at Mid-West only if it had continued the pension payments and remained a union contractor.

The referee found Ross quit his job because Mid-West would not bargain with the union. The referee found Ross was ineligible for unemployment benefits because he elected to quit without good cause attributable to the employer. No reference was made to the pension payment. Ross appealed to the Employment Se-

curity Board of Review (Board), citing no statutory authority for his position.

While the referee found Pierce had raised the pension payment as an issue, the main reason he quit was that Mid-West was no longer a union contractor. The referee's decision referred to Pierce's testimony that he would have stayed at Mid-West only if it made the pension contribution and was a union shop. Union membership was not relevant to the issue of refusing available employment. The referee affirmed the examiner's decision. Pierce appealed to the Board, citing no statutory basis for his claim.

In deciding Pierce's case, the Board noted Mid-West discontinued making contributions into the pension fund on behalf of Pierce and found Pierce's benefits were substantially reduced. In deciding Ross' case, the Board noted Ross terminated his employment after the union representative told him that he should do so "if he elected to continue to be covered under the Union's agreement and benefits." The Board determined Ross and Pierce terminated their employment with Midwest with good cause attributable to the employer under K.S.A. 1998 Supp. 44-706(a)(10). The Board concluded Ross and Pierce were entitled to unemployment compensation and reversed the referee's decisions. Mid-West appealed both cases to the district court.

The district court concluded the referee's decisions were correct and the "Board's decisions were contrary to the law of the State of Kansas and not supported by the evidence contained in the record of both cases." The court reversed the Board's decision and reinstated the referee's decision in both cases.

A court reviewing the board's decision is governed by the Kansas Act for Judicial Review and Civil Enforcement of Agency Actions (KJRA), K.S.A. 77-601 *et seq.* K.S.A. 1998 Supp. 44-709(i). The scope of judicial review is limited to the reasons set out in K.S.A. 77-621(c). Here, the court reversed the Board for the stated reason it erroneously interpreted the law, and its decisions were not based on substantial facts supported in the record. Granting relief for these reasons is allowed under K.S.A. 77-621(c)(4) and (7). When a court reviews an agency's interpretation of a question of law, it may substitute its judgment for that of the agency. *Palmer News,*

*Inc. v. Kansas Employment Security Bd. of Review*, 24 Kan. App. 2d 655, 656, 951 P.2d 546 (1997).

Ross and Pierce argue the district court erred by not considering K.S.A. 1998 Supp. 44-706(c), which provides that an individual becomes disqualified for benefits if he or she refuses suitable work. They argue that employment at Mid-West without the pension payment was not suitable work when considering the factor of prior earnings.

Two major problems exist regarding this first issue. First, our standard of review limits our jurisdiction to considering K.S.A. 1998 Supp. 44-706(a)(10), which the Board interpreted and applied. This statute was the basis of the appeal to the referee. While Mid-West did not artfully articulate or specifically object to Ross and Pierce relying upon 44-706(c) for the first time in this appeal, it did claim this issue was not raised in earlier proceedings. The transcript and notice of appeal do not show "all statutory issues" were preserved, and issues not raised before the administrative hearing officer may not be raised on appeal. *Furthmyer v. Kansas Dept. of Revenue*, 256 Kan. 825, 827-28, 888 P.2d 832 (1995).

Second, K.S.A. 1998 Supp. 44-706(c) is applicable only if a claimant is eligible for benefits and then becomes disqualified by not accepting suitable work. Even if Ross and Pierce had properly raised the statute, the case which Ross and Pierce rely upon, *Boeing Company v. Kansas Employment Security Board of Review*, 209 Kan. 430, 496 P.2d 1376 (1972), shows they were ineligible. In *Boeing*, claimant's last position was as a skilled worker. Boeing reduced its work for claimant's job classification, and he was laid off. Prior to termination, Boeing offered claimant work as a semi-skilled worker which reduced his pay and had repercussions to his rate retention, seniority, and vacation and sick leave benefits. Claimant rejected the new position. The examiner, referee, district court, and Supreme Court all held the claimant was eligible for benefits because claimant was laid off by Boeing due to lack of work.

After determining claimant was eligible, an ancillary issue was whether he became disqualified by refusing Boeing's offer of other work. "[A]s a general rule a claimant may be eligible for unem-

ployment compensation benefits for a reasonable length of time while he seeks employment commensurate with his skills, training, ability and previous earning capacity." Also, after an increased period of time, a claimant might have to lower his or her expectations for wages and job requirements. 209 Kan. at 434. Thus, before 44-706(c) is applicable, a claimant must first be eligible for benefits. Here, Ross and Pierce were not laid off by Mid-West due to a lack of work. Rather, they resigned because Mid-West was no longer a union contractor.

Even though Ross and Pierce have raised the wrong statute, their appeal is about eligibility. The standard of review stated above applies.

Under K.S.A. 1998 Supp. 44-706(a)(10), it must be shown the employer violated an agreement. The alleged contract violation is the nonpayment of the pension fund after the May 31 expiration. Ross and Pierce cannot demand that Mid-West continue making the payment into the union's fund because to do so would be illegal. A contract for prohibited conduct is unenforceable, and the courts will not aid either party in the prohibited conduct. See *Early Detection Center, Inc. v. Wilson*, 248 Kan. 869, 880, 811 P.2d 860 (1991).

Ross and Pierce claim Mid-West should have compensated them by increasing their pay commensurate with the lost pension payments. They cite no authority requiring Mid-West to do so. When a point is incidentally raised but not argued, it is deemed abandoned. *McKissick v. Frye*, 255 Kan. 566, 578, 876 P.2d 1371 (1994). After May 31, if any contract was in existence, it had to be a contract implied in fact.

Because Ross and Pierce continued to do the same work in June, it is arguable their total compensation for pay and benefits should remain the same. However, Ross and Pierce knew on June 1 that Mid-West would cease the pension payments, yet they continued to work. The facts and circumstances do not show a mutual intent to contract for such compensation. An implied contract requires mutual assent or a meeting of the minds. The unilateral expectations of an employee do not create an implied contract for contin-

uing employment. *Dickens v. Snodgrass, Dunlap & Co.*, 255 Kan. 164, 173-74, 872 P.2d 252 (1994).

Mid-West did not violate any terms of a written or implied contract; therefore, Ross and Pierce are not eligible for benefits.

Ross and Pierce also claim the court reversed the Board's decision because they voluntarily stopped working for Midwest due to a labor dispute when the record has no evidence of a work stoppage. Under K.S.A. 1998 Supp. 44-706(d), a person is disqualified from receiving benefits if his or her unemployment is due to a work stoppage which exists because of a labor dispute. Ross and Pierce are correct the evidence is insufficient to support a finding of a work stoppage due to a labor dispute. However, when the decision is read in its entirety, it appears this argument is a mischaracterization of the court's decision.

The court specifically stated the reason for its reversal.

"7. The court hereby reverses the action of the Board and reinstates the original decision of the referee. The court's action is taken pursuant to K.S.A. § 77-621(c)(4), on the basis that the Board erroneously interpreted or applied the law in these cases. . . . The grounds for the [referee's] decision in both cases is that they left work voluntarily without good cause attributable to the work or the employer. The court hereby concludes that the referee was correct and that the Board's decisions were contrary to the law of the State of Kansas and not supported by the evidence contained in the record of both cases.

8. The court finds that both claimants stopped work voluntarily because of [a] labor dispute. Since the claimants left work without good cause attributable to the work or the employer."

The reasons stated in paragraph 7 are not about a labor dispute or work stoppage. An interpretation of the term "labor dispute" which is reasonable and consistent with the court's conclusion and the facts in both cases is that the parties could not agree to a new labor agreement. Regardless of the interpretation, the first sentence in paragraph 8 is surplusage because it is not a necessary finding to support its conclusion. "[A] trial court's reason for its decision is immaterial if the ruling is correct for any reason. [Citation omitted.]" *KPERS v. Reimer & Koger Assocs., Inc.*, 262 Kan. 110, 118, 936 P.2d 714 (1997).

Affirmed.