NOT DESIGNATED FOR PUBLICATION

No. 118,618

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

LUKE MICHAEL RICHARDS,
*Appellant*,

v.

EMPLOYMENT SECURITY BOARD OF REVIEW, CECELIA RESNIK, Executive Secretary, and
RILEY COUNTY LAW ENFORCEMENT AGENCY,
*Appellees*.

MEMORANDUM OPINION

Appeal from Riley District Court; MERYL D. WILSON, judge. Opinion filed August 10, 2018.
Affirmed.

*Paul Shipp*, of Kansas Legal Services, for appellant.

*Justin McFarland*, special assistant attorney general, of Kansas Department of Labor, for
appellees.

Before MCANANY, P.J., PIERRON, J., and WALKER, S.J.

PER CURIAM:  The Riley County Law Enforcement Agency (RCLEA) fired Luke
Michael Richards after he threatened his coworker. A Kansas Department of Labor
(KDOL) examiner denied his request for unemployment benefits, finding Richards was
ineligible because he was fired for misconduct. An appeals referee for the Employment
Board of Review (Board) upheld the finding of ineligibility. The Board and the district
court both affirmed. Because we find that Richards' appeal from the district court lacks
merit, we affirm the denial of unemployment benefits.

1

Richards worked for RCLEA as a corrections officer. RCLEA fired him after finding he had committed improper conduct during a prisoner transport. Police Service Aide Sarah Hagerty reported that she and Richards were driving four inmates to Riley County District Court. During the drive, Richards told Hagerty about his wife's most recent suicide attempt. Richards also said he had held a loaded gun to his head the previous day. Hagerty stated Richards then told her, "'[I]f you tell anyone this, I will fucking kill you.'"

Hagerty did not tell anyone about the incident until the next day, when she mentioned it to two other corrections officers. Those officers took Hagerty to their supervisor's office to report it. Hagerty later told an internal affairs officer that she was not sure what Richards was capable of. Hagerty's report led to RCLEA firing Richards.

After being fired, Richards filed a claim for unemployment benefits. In response to a request for information, RCLEA told the KDOL that it had fired Richards for threatening a coworker. A KDOL examiner denied Richards benefits, finding RCLEA discharged Richards for misconduct connected to his work. Richards appealed the examiner's decision.

An appeals referee for the Board held a telephone hearing on Richards' appeal. Hagerty was not there to testify. Instead, Christine Robinson, Human Resources Coordinator, recounted Hagerty's statement. Robinson also testified that Richards had never received a warning for similar conduct before. She stated that Richards was familiar with RCLEA's policies about the agency code of conduct, courtesy, and his duty not to discredit the agency. She said Richards also had signed a sheet saying he had read each section of the policy manual.

Robinson explained that the Director of the Riley County Police Department, Bradley Schoen, ultimately made the decision to fire Richards, so she could not speak to his reasons for doing so. She added, however, that both an administrative and criminal investigation had concluded that the incident did happen. And while the county attorney had declined to prosecute, that was not relevant for employment purposes. Robinson stated that the RCLEA could not overlook the circumstances because it could result in public distrust of the agency.

Captain Kurt Moldrup, the Jail Division Commander, testified that he reported the incident to Schoen, who started an administrative and criminal investigation. Moldrup did not oversee either investigation. Even so, he knew the criminal investigation had been sent to the county attorney, who decided not to prosecute. He also knew the administrative investigation found Richards had violated the policy on unprofessional conduct and courtesy. Under this policy, "[d]epartment members will not engage in any conduct that might discredit the members or the department, whether on duty or off duty." According to Moldrup, all employees must review RCLEA policies upon being hired and attend an orientation class about these policies.

Moldrup believed Richards had admitted threatening Hagerty. He later clarified that Richards said he did not remember if the conversation happened, but he did not think Hagerty was lying. Thus, he concluded that if Hagerty said it happened, then it probably did happen.

Moldrup said that Schoen ultimately made the decision to fire Richards. Moldrup was at the hearing and presumed Schoen fired Richards because of the seriousness of the threat and "the instability of the situation." Moldrup added that Richards was a probationary employee, so Schoen could fire him at any time at Schoen's discretion. He also noted that Richards violated another policy by talking about the investigation with another corrections officer through a text message while the investigation was ongoing.

3

Richards also testified at the hearing. He said he did not remember much of that day because his week had gone poorly. Much of what he knew about the incident came from what investigators had told him. Contrary to what Moldrup had said, Richards stated he did not admit to threatening Hagerty. Instead, he said the only way Hagerty could have known about Richards' wife's suicide attempt was if Richards had said something. Richards could not recall the conversation he had with Hagerty, but he normally was not the kind of person to threaten someone, so he did not think he had done so. He believed Hagerty had simply been talking with her coworkers about how Richards was depressed and suicidal, and Hagerty just elaborated on the story.

Richards said he was aware of the unprofessional conduct policy, and he was told he was fired for improper conduct. He believed, however, that his transgender status affected his termination. According to Richards, he had never received a bad performance review until he started hormones. Robinson denied that Richards' transgender status had anything to do with the decision to fire him.

Richards also submitted the report from his criminal investigation as evidence. In that report, Hagerty told investigators that Richards did not sound like he was joking when he threatened her. The detective for the criminal investigation also interviewed the inmates riding with Richards and Hagerty that day, who all said it would have been virtually impossible for them to have overheard any conversation between the two. Finally, the detective interviewed Richards, who said Richards did not recall the conversation but adamantly denied making the threat. Richards added that if he did make the threat, he did not mean it. The detective concluded that the incident likely occurred and recommended the case be sent to the county attorney.

The RCLEA also submitted around 50 pages of documentation, including portions of its policy manual covering unprofessional conduct and the administrative investigation report. In the report, Richards confirmed that he had held a loaded gun to his head the day

before the incident because he was suicidal. He told the investigator that he did not remember the conversation with Hagerty, but the threat did not seem like something he would say. He also admitted to yelling at an inmate after court that day.

After the hearing, the appeals referee affirmed the examiner's decision, finding:

"In this case, the claimant reasonably owed his employer a duty to interact with his colleagues in a reasoned and dignified manner as a condition of his employment. He violated that duty November 7, 2016 when he threatened to physically harm his coworker. Hagerty did not threaten physical violence against the claimant at any point and the claimant escalated the situation when he stated, '. . . and Hagerty if you tell anyone that I will fucking kill you.' This statement expresses intent to cause grave physical harm against his colleague. The claimant does not recall making the statement, but does not deny making it. Here, the claimant's behavior constitutes misconduct."

The referee also rejected Richards' claim that his transgender status affected Schoen's decision, noting Robinson had denied it.

Richards appealed the appeals referee's decision to the Board. The record indicates that the Board held no hearing and received no additional testimony. The Board affirmed the referee's decision and adopted its findings of fact. The Board stated it "agrees with the previous decision made by the Referee."

Richards then petitioned for judicial review. He argued RCLEA had failed to meet its burden of proof that he violated a duty owed to his employer and that the RCLEA was unfairly and inconsistently enforcing policies against him because of his transgender status. He also filed a memorandum in support of his appeal, arguing the appeals referee had relied on uncorroborated hearsay in making her findings, in violation of K.A.R. 48-1-4(a)(3) (2017 Supp.).

The district court affirmed the Board's finding, holding it was supported by substantial competent evidence. The court explained, "[Richards] never objected to the introduction of hearsay documents and in fact relied upon the detective's investigative report in [Richards'] appeal to the referee. Even if [Richards] had objected, the hearsay evidence was not the only evidence presented."

Richards has timely appealed from the district court's decision.

ANALYSIS

On appeal, Richards argues substantial evidence does not support the appeals referee's and Board's finding that he committed misconduct. He identifies several errors he claims were made in reaching this conclusion. First, Richards contends the finding is based on uncorroborated hearsay in violation of K.A.R. 48-1-4(a)(3) (2017 Supp.). He also asserts substantial evidence does not support the findings that (1) he violated his employer's policy or a duty owed to his employer, (2) he was fired because of the threat he made to Hagerty, and (3) RCLEA fairly and consistently applied its policy on unprofessional conduct. Finally, Richards argues he qualifies for one of the statutory exceptions to the rule that employees discharged for misconduct may not receive unemployment benefits.

The Board does not specifically respond to most of Richards' arguments. Instead, the Board generally argues the record shows by a preponderance of the evidence that Richards committed misconduct. It adds that Richards has not shown he qualifies for a statutory exception.

Disputes relating to the award or denial of unemployment compensation are subject to review under the Kansas Judicial Review Act (KJRA). *Norris v. Kansas Employment Security Bd. of Review*, 303 Kan. 834, 837-38, 367 P.3d 1252 (2016). The

6

KJRA defines the scope of judicial review of state agency actions unless the statute specifically exempts the agency. K.S.A. 2017 Supp. 77-603(a); *Ryser v. Kansas Bd. of Healing Arts*, 295 Kan. 452, 458, 284 P.3d 337 (2012). This court exercises the same statutorily limited review of the agency's action as does the district court, as though the appeal had been made directly to the appellate court. *Kansas Dept. of Revenue v. Powell*, 290 Kan. 564, 567, 232 P.3d 856 (2010). On appeal, the burden of proving the invalidity of the agency action rests on the party asserting that invalidity. K.S.A. 2017 Supp. 77-621(a)(1); *In re Equalization Appeal of Wagner*, 304 Kan. 587, 597, 372 P.3d 1226 (2016).

The KJRA outlines eight circumstances under which this court may grant relief. K.S.A. 2017 Supp. 77-621(c). Richards argues that substantial evidence does not support the appeals referee's fact-findings, which the Board adopted. See K.S.A. 2017 Supp. 77-621(c)(7). When reviewing a challenge to an agency's factual findings, this court must determine whether substantial competent evidence supports the findings in light of the record as a whole. See K.S.A. 2017 Supp. 77-621(c)(7). "This analysis requires the court to (1) review evidence both supporting and contradicting the agency's findings; (2) examine the presiding officer's credibility determination, if any; and (3) review the agency's explanation as to why the evidence supports its findings. [Citations omitted.]" *Williams v. Petromark Drilling*, 299 Kan. 792, 795, 326 P.3d 1057 (2014); see also K.S.A. 2017 Supp. 77-621(d). Substantial evidence is such legal and relevant evidence as a reasonable person might accept as sufficient to support a conclusion. *Gannon v. State*, 298 Kan. 1107, 1175, 319 P.3d 1196 (2014). In reviewing the evidence, we do not reweigh the evidence or engage in de novo review. K.S.A. 2017 Supp. 77-621(d).

If an employer fires an employee for misconduct related to his or her work, that employee is ineligible for unemployment benefits. K.S.A. 2017 Supp. 44-706(b). K.S.A. 2017 Supp. 44-706(b)(1) defines misconduct as

"a violation of a duty or obligation reasonably owed the employer as a condition of employment including, but not limited to, a violation of a company rule, including a safety rule, if: (A) The individual knew or should have known about the rule; (B) the rule was lawful and reasonably related to the job; and (C) the rule was fairly and consistently enforced."

A single incident of misconduct may disqualify an individual from receiving benefits. *Helmick v. Kansas Employment Security Bd. of Review*, 17 Kan. App. 2d 444, 446, 839 P.2d 49 (1992). The employer bears the burden of proving misconduct by a preponderance of the evidence. *Farmland Foods, Inc. v. Abendroth*, 225 Kan. 742, 744, 594 P.2d 184 (1979). This standard requires a showing that "'a fact is more probably true than not true.' [Citation omitted.]" *Gannon*, 298 Kan. at 1124.

In its brief, the Board argues that Richards committed misconduct by holding a gun to his head while off duty and discussing the ongoing investigation with a coworker in violation of an order not to do so. But the appeals referee found only that Richards committed misconduct by threatening Hagerty. Because this court does not make fact-findings or engage in de novo review, the only misconduct on review for this appeal is Richards' alleged threat.

*Uncorroborated hearsay*

Richards first argues that the appeals referee—and the Board that adopted the referee's findings—relied only on uncorroborated hearsay when the referee found that Richards threatened Hagerty. K.A.R. 48-1-4 (2017 Supp.) governs the conduct of the hearing before the referee. Under that regulation, "[t]he referee shall receive evidence logically tending to prove or disprove a given fact in issue." K.A.R. 48-1-4(a)(2) (2017 Supp.). Hearsay evidence is admissible "but carries less weight than direct evidence and shall not be persuasive if the other party contests its admissibility." K.A.R. 48-1-4(a)(2)

8

(2017 Supp.). While hearsay evidence is admissible, "[u]ncorroborated hearsay evidence shall not solely support a finding of fact or decision." K.A.R. 48-1-4(a)(3) (2017 Supp.).

Although neither party has directly raised this omission on appeal, we note that Richards did not specifically argue that the appeals referee relied on uncorroborated hearsay in violation of K.A.R. 48-1-4 (2017 Supp.) before reaching the district court level. Generally, a party may not raise on appeal an issue not raised before the administrative hearing officer. *Mid-West Painting, Inc. v. State Employment Security Bd. of Review*, 26 Kan. App. 2d 266, 269, 984 P.2d 146 (1999). In his appeal to the Board, however, Richards did argue that there was no evidence to support the referee's findings because "[h]earsay . . . is not evidence." Nonetheless, we are inclined to consider this issue despite the appellant's inartful way of raising the argument, particularly because Richards appealed to the Board pro se.

Richards points out that Hagerty was the only one who heard Richards make a threat, and Hagerty did not testify at the hearing. But while Hagerty's statement was hearsay, it was not totally uncorroborated, and it was not the only evidence presented at the hearing. Richards testified that he could not remember having the conversation with Hagerty, but he admitted it must have happened. He acknowledged this is the only way Hagerty could have known about his wife's suicide attempt and that he had held a gun to his head. And while Richards did not admit threatening Hagerty, he also did not deny it. He only stated he did not believe he did it because it did not seem like something he would do.

Finally, Richards admitted into evidence the criminal investigation report, which included Hagerty's statement as well as the detective's conclusion that the incident likely occurred. The appeals referee therefore did not rely solely on uncorroborated hearsay in reaching a decision, though it would have been better practice for Hagerty to have testified at the hearing.

9

*Violation of a policy or duty*

Richards also contends that (1) RCLEA failed to prove he violated its policy on unprofessional conduct and (2) substantial evidence does not support the appeals referee's finding that Richards owed his employer a duty to interact with his coworkers in a reasoned and dignified manner. As for the RCLEA's unprofessional conduct policy, Richards states: "[RCLEA] offered no evidence that a private, personal conversation between two coworkers in the privacy of a transport van, which was not heard by anyone else might discredit the department, and it is not at all apparent why this might be the case."

This argument is not persuasive. While the conversation between Hagerty and Richards was originally private, the record shows it did not stay that way, and Hagerty was concerned about what Richards could do. Additionally, Richards' conduct could have led to criminal charges, which would have certainly discredited the RCLEA. In fact, Robinson testified that if the RCLEA overlooked this incident, it could result in public distrust of the agency.

As for Richards' duty to act in a reasoned and dignified manner, RCLEA produced evidence of its policy on unprofessional conduct as well as evidence that Richards was aware of this policy. An employee would need to act in a reasoned and dignified manner to avoid discrediting RCLEA or its employees. And even if there is no evidence to support this finding, the appeals referee also stated in the fact-findings that Richards had violated RCLEA's unprofessional conduct policy. Thus, substantial evidence supports the referee's finding that Richards violated a duty owed to his employer.

10

*Reason for firing*

Richards next argues that RCLEA produced no evidence that it fired Richards only because of the threat he made to Hagerty. He notes that Schoen was ultimately responsible for the decision to fire Richards, and Schoen did not testify at the hearing. Neither Robinson nor Moldrup could say for sure why Schoen had decided to fire Richards. Richards adds that his pretermination hearing notice stated the hearing was about performance issues and violations of RCLEA policies.

While Schoen did not testify at the appeals referee hearing, other evidence in the record shows the RCLEA fired Hagerty as a result of the threat he made. The record contains the final disposition of Richards' internal affairs investigation. That document shows Schoen found Richards had violated policies about unprofessional conduct, courtesy, and lawful order, and recommended dismissal for all three violations. RCLEA also informed KDOL that it fired Hagerty because he threatened a coworker. And while Moldrup could not testify about why Schoen decided to fire Richards, he was present at the hearing and could presume the reason was the threat Richards made to Hagerty. Finally, Richards testified he was told he was fired for improper conduct.

Richards cites *Sabatino v. Employment Security Bd. of Review*, No. 116,322, 2017 WL 2212116 (Kan. App. 2017) (unpublished opinion), to support his argument that "it is inappropriate for this court or any court to speculate or divine a reason for [Richards'] firing that the employer did not offer." In *Sabatino*, the employer originally fired the employee for insubordination and inefficiency, but the parties later stipulated that the employee was fired only for inefficiency. Despite the stipulation, the Board found that the employee was fired for misconduct. This court reversed, finding the Board could not ignore the stipulation and substantial competent evidence did not support its finding. 2017 WL 2212116, at *7.

11

*Sabatino* does not help Richards. Here, the parties have not stipulated to a cause for Richards' firing. And RCLEA presented Richards' threat as the primary reason it fired him. The Board thus did not find RCLEA fired Richards for a reason other than the one RCLEA offered.

*Fairly and consistently applied*

Richards also argues that RCLEA failed to show it fairly and consistently enforced its unprofessional conduct rule. He points to his testimony that he believed his transgender status influenced RCLEA's decision to fire him. The appeals referee rejected this claim, however, noting that Robinson denied that Richards' transgender status had anything to do with the decision to fire him. And while Richards testified he had never received a bad performance review before he began transitioning, RCLEA did not fire Richards for bad performance. As the referee stated, Richards physically threatened a coworker, which violated the unprofessional conduct policy. See *Rhodenbaugh v. Kansas Employment Sec. Bd. of Review*, 52 Kan. App. 2d 621, 633, 372 P.3d 1252 (2016) (finding nothing in record shows employer failed to enforce rule fairly and consistently).

*Statutory exceptions*

Finally, Richards argues he still qualifies for unemployment benefits because he meets a statutory exception to the general rule on discharge for misconduct. As he points out, an individual "shall not be disqualified" from unemployment benefits if the individual was making a good-faith effort to do the assigned work but was discharged because of "isolated instances of ordinary negligence" or "good-faith errors in judgment or discretion." K.S.A. 2017 Supp. 44-706(b)(4)(B)(iii) and (iv). He argues the appeals referee should have found he still qualified for benefits under these exceptions.

12

Richards did not raise this argument in his petition for judicial review, so this court lacks jurisdiction over it. See *Kingsley v. Kansas Dept. of Revenue*, 288 Kan. 390, 397, 204 P.3d 562 (2009). That said, this argument lacks merit. Richards does not explain how threatening a coworker with physical harm occurred as part of a good-faith effort to do his assigned work, nor is it clear how it would be.

CONCLUSION

In conclusion, substantial evidence supports the finding that Richards committed misconduct by physically threatening a coworker. Richards also does not qualify for a statutory exception which would allow him to collect unemployment benefits despite being discharged for misconduct.

Affirmed.