NOT DESIGNATED FOR PUBLICATION

No. 119,489

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

In the Matter of the Marriage of

JAIME L. WHILDIN,
*Appellant*,

and

THOMAS M. WHILDIN,
*Appellee.*

MEMORANDUM OPINION

Appeal from Miami District Court; STEVEN C. MONTGOMERY, judge. Opinion filed July 5, 2019. Affirmed in part and dismissed in part.

*Joseph W. Booth*, of Lenexa, for appellant.

*Steven A. Jensen*, of Paola, for appellee.

Before SCHROEDER, P.J., BUSER and ATCHESON, JJ.

PER CURIAM: This appeal involves the enforceability of contractual provisions in a separation agreement and property settlement filed by Jaime L. Whildin and Thomas M. Whildin and incorporated into their divorce decree.

Jaime appeals the hearing officer's order modifying child support and the district court's judgment affirming that order. Jaime raises four issues on appeal. First, she contends the district court erred by refusing to enforce the parties' agreement that Thomas would maintain extensive business records and employ a certified public accountant

(CPA) to establish his yearly gross domestic income for purposes of determining future child support. Second, Jaime argues the district court should have enforced the stipulation of Thomas' minimum gross domestic income when calculating child support. Third, Jaime asserts the district court erred when using the extended income formula to calculate the parties' child support obligations. Fourth, Jaime contends the district court erred by not awarding her attorney fees. Fifth, Jaime seeks attorney fees for prosecuting this appeal. Finally, Thomas, as appellee, claims error in the arbitrary imputation of a gross wage of $52,500 per year as Thomas' gross domestic income for purposes of calculating child support.

Upon our review, we affirm the rulings of the hearing officer and district court. We also dismiss Thomas' claim of error and deny Jamie's motion for appellate attorney fees.

FACTUAL AND PROCEDURAL BACKGROUND

Jaime and Thomas were married in 2003. During their marriage, the couple raised their two children together and resided in La Cygne. In October 2013, Jaime filed a petition for divorce and moved to Louisburg.

During the divorce proceedings, Jaime was employed as an air traffic control specialist with the Federal Aviation Administration earning about $124,912 per year. Thomas was a self-employed electrician who owned his own electrical business which he operated out of the marital residence. Throughout the litigation, there was disagreement regarding Thomas' income for purposes of determining child support. Jaime alleged Thomas' annual income was about $120,000, while he calculated his annual income at $14,040.

2

Ultimately, Jaime and Thomas entered into a separation agreement, property settlement, and parenting plan. The parenting plan called for joint legal custody and shared residential custody of the minor children. The plan also provided that the couple would share parenting time on an equal basis with the children. Under the plan, the children were to attend school in Louisburg instead of LaCygne.

The separation agreement and property settlement (Agreement) provided that Jaime was to pay Thomas $350 in spousal maintenance for a 24-month period. The Agreement also contained several provisions pertaining to child support payments. Although the couple disagreed on the methods and figures to calculate child support, they compromised with Jaime agreeing to pay Thomas $900 per month for child support. For his part, Thomas agreed to pay all direct expenses for the two children.

The Agreement also outlined the couple's stipulations for future modifications of child support payments. The couple agreed that Thomas had no right to seek an increase in child support payments until after July 1, 2016. Thomas stipulated that he would maintain proper financial records, financial reports, source documents, and employ a CPA to prepare quarterly and annual financial reports.

Finally, the couple stipulated that in any future child support modification proceedings, Thomas' gross domestic income for calculating support "shall be either [Thomas'] gross domestic income at that time or the sum of $75,000.00, whichever is greater." The Agreement provided that Thomas' gross domestic income could be less than $75,000 only if he was disabled or not gainfully employed because of serious injury or illness. The couple suggested these stipulations were necessary for the future because of the dispute over Thomas' income.

In August 2014, the district court issued a divorce decree which incorporated the Agreement. The district court ordered that Thomas should maintain appropriate record

keeping to show his gross domestic income from self-employment. Additionally, the district court ordered, per the Agreement, that Thomas' gross domestic income when modifying child support would be the greater of his actual gross domestic income or $75,000.

About a year and a half later, on March 18, 2016, Thomas moved to modify child support. He argued that child support should be modified because Jaime's income had increased, the parties needed an expense sharing plan, and his receipt of spousal maintenance was set to terminate in June 2016. Thomas sought an order increasing Jaime's monthly child support obligation to $1,466 effective July 1, 2016.

In Jaime's answer to Thomas' motion for modification, she claimed he was barred from arguing that his gross domestic income was less than $75,000. Jaime also asserted that Thomas failed to produce business records and information that he agreed to maintain under the Agreement. She sought attorney fees incurred due to Thomas' motion to modify child support. Thomas responded that his record keeping requirements and stipulated minimum gross domestic income were void as against public policy and not in the children's best interests. Thomas claimed his income for 2015 was $28,353, including Jaime's maintenance payments to him.

An administrative hearing officer held a hearing on Thomas' motion to modify child support. At the hearing, the parties discussed the children's daycare situation and Thomas' work hours. Thomas claimed his work hours were limited due to transporting the children to and from school in Louisburg. This travel limited Thomas to working about 25-30 hours per week for which he could not feasibly make $75,000 a year. Jaime suggested that the children's maternal grandmother could pick up the children from school and watch them until Thomas finished work. The hearing officer noted that Thomas needed to work 40 hours per week and ordered the parties to obtain daycare for the children.

4

With regard to the dispute over the amount of Thomas' income, the hearing officer advised that she was "not stuck" with the parties' stipulation that Thomas had a minimum gross income of $75,000 a year. Thomas argued that, with his reduced hours, he was currently making less than $2,000 a month. With an increase to a 40-hour work week, Thomas opined that he could make about $30,000 a year.

For her part, Jaime insisted the hearing officer should use the $75,000 minimum amount that Thomas agreed should be imputed as his gross domestic income. She argued that Thomas "whittle[d]" down his income by claiming a "bunch of expenses." Jaime suggested that Thomas failed to maintain records he agreed to keep and did not provide documents to substantiate his income and expenses. Instead, Thomas produced only a profit and loss statement and bank records. Jaime asserted the Agreement's provision requiring Thomas to keep business records was not against public policy and should be enforced.

The hearing officer split the difference between the parties' disputed claims about Jaime's income and imputed a wage of $52,500 per year as Thomas' gross income for purposes of calculating child support. Next, a 15% parenting time adjustment was made to Jaime's child support obligation. The hearing officer calculated Jaime's annual income at $162,750.16 based on her most recent paystub.

At the end of the hearing, Jaime questioned why the hearing officer was not enforcing the Agreement requiring Thomas to maintain certain business records. The hearing officer responded that because Thomas was self-employed he needed to maintain financial records but due to the significant expense of hiring a CPA to maintain and analyze the records provided in the Agreement, she was not enforcing that provision.

The hearing officer filed a journal entry memorializing the hearing. The hearing officer found the Agreement's provision stipulating to a minimum gross income for

5

Thomas of $75,000 was against public policy and unenforceable. The provision requiring Thomas to maintain business records was also deemed unenforceable. Based on Thomas' imputed income of $52,500 per year and Jaime's annual income of $162,750.16, the hearing officer ordered Jaime to pay Thomas $2,167 per month in child support and filed a child support worksheet in support. The worksheet indicates that the hearing officer used the extended income formula to calculate Jaime's child support obligation.

Jaime filed a motion for review, asking the district court to review the hearing officer's child support order. In her motion, Jaime argued:  (1) The provision requiring Thomas to maintain business records was valid and nonmodifiable; (2) the stipulation that Thomas' gross income would be calculated at a minimum of $75,000 was an enforceable agreement; and (3) the hearing officer erred by using the extended income formula to calculate child support. Jaime sought the calculation of child support using the stipulation that Thomas' annual income was $75,000. She also sought attorney fees based upon her claim that Thomas breached the Agreement.

The district court affirmed the hearing officer's child support rulings. In its ruling, the district court cited *In re Marriage of Schoby*, 269 Kan. 114, Syl. ¶ 1, 4 P.3d 604 (2000), for the rule that "[d]ivorced parents cannot legally reduce child support or terminate the obligation by a contractual agreement or otherwise." Relying on *Schoby* and three out-of-state cases, the district court adopted the hearing officer's findings of fact and conclusions of law in their entirety.

Jaime filed a timely appeal.

6

A district court has continuing jurisdiction to modify a child support order when the facts and circumstances make modification proper. *Schoby*, 269 Kan. at 121. Our court ordinarily reviews a district court's order determining the amount of child support for an abuse of discretion. *In re Marriage of Skoczek,* 51 Kan. App. 2d 606, 607, 351 P.3d 1287 (2015). But the interpretation of the Kansas Child Support Guidelines (KCSG) is a question of law subject to unlimited review. 51 Kan. App. 2d at 607.

This appeal involves interpreting the legal effect of a separation agreement. An appellate court exercises unlimited review over the interpretation and legal effect of written instruments and our court is not bound by the district court's interpretation of those instruments. *Frazier v. Goudschaal*, 296 Kan. 730, 748, 295 P.3d 542 (2013). As a result, to the extent this issue involves interpreting the Agreement, our court's review is de novo. *In re Marriage of Strieby*, 45 Kan. App. 2d 953, 961, 255 P.3d 34 (2011).

A separation agreement is subject to the same rules of law applicable to other contracts. *In re Marriage of Traster*, 301 Kan. 88, 105, 339 P.3d 778 (2014). Contracts must be liberally interpreted to carry out the intention of the contracting parties and our court upholds contracts if they are fairly and understandingly made, are just and equitable in their provisions, and are not obtained by fraud or overreaching. 301 Kan. at 105. There is no presumption that a contract is illegal, and the burden of showing the wrong is upon the person who seeks to deny the obligation. The presumption is in favor of innocence and the taint of wrong is a matter of defense. 301 Kan. at 105 (quoting *Frazier*, 296 Kan. at 749).

A separation agreement is a special kind of contract, however, because without consent by the parties, "[m]atters settled by an agreement incorporated in the decree,

7

*other than matters pertaining to* the legal custody, residency, visitation, parenting time, *support* or education *of the minor children*, shall not be subject to subsequent modification by the court." (Emphases added.) K.S.A. 2018 Supp. 23-2712(b). Importantly, any provisions in a settlement agreement related to the support of a minor child are subject to the control of the district court. K.S.A. 2018 Supp. 23-2712(a). Child support is a right belonging to the child and may not be reduced or terminated by an agreement between the parents. *Schoby*, 269 Kan. 114, Syl. ¶ 1.

Finally, Kansas public policy requires our courts to act in the best interests of the children when determining the legal obligations to be imposed and the rights conferred in the parent and child relationship. *Frazier*, 296 Kan. 730, Syl. ¶ 7. "After the family unit fails to function because of legal dissolution, the child's interests become a matter for the State's intrusion." *In re Marriage of Ross*, 245 Kan. 591, 602, 783 P.2d 331 (1989). In this function, courts do not allow a parent's claim for a child that is based solely or predominantly on selfish motives to jeopardize the child. *Frazier*, 296 Kan. at 747.

FAILURE TO ENFORCE THE RECORD KEEPING REQUIREMENT

Jaime contends the hearing officer and district court erred when they refused to enforce the provision in the Agreement that Thomas would maintain various business records and employ a CPA to prepare financial reports and assist in bookkeeping. In response, Thomas argues this provision is not enforceable because it is against Kansas public policy.

The hearing officer did not enforce this provision of the settlement agreement because—although it was important for Thomas to maintain records—due to his self-employed status, the hearing officer found the significant expense and burdens associated with hiring a CPA to analyze, keep, and maintain the specified records was cost-

8

prohibitive. Moreover, as the hearing officer informed Thomas, "I need you making money."

On appeal, Jaime suggests the hearing officer and district court did not have jurisdiction to modify the Agreement. However, the records provision was written to provide a financial basis to calculate child support, and the provision is found in the section of the Agreement entitled "Agreements and Stipulations for Future Modification of Child Support." We are persuaded this provision of the Agreement was pertaining to child support, and, therefore, appropriately within the jurisdiction of the hearing officer and district court. See K.S.A. 2018 Supp. 23-2712(a) and (b).

Our reading of the record indicates the hearing officer, while not enforcing the Agreement's provision for collection of voluminous, detailed records and source documents with periodic analysis by a CPA, did emphasize the necessity for Thomas to maintain essential records to prove his income and expenses for purposes of future child support modifications. Given the obvious expense of complying with this provision, and the need for Thomas to limit expenses because of his self-employment, we are unable to conclude that this discretionary judgment was an abuse of discretion.

FAILURE TO ENFORCE THE STIPULATION REGARDING THOMAS' MINIMUM INCOME

Jaime next contends the district court erred when it refused to apply the provision in the Agreement that stipulated that Thomas' gross domestic income would be calculated at a minimum of $75,000 a year. Thomas responds that this stipulation was not in the best interests of the children and was unenforceable as against public policy. Like the previous issue, this subject matter involves interpreting the legal effect of the parties' separation agreement. Our review is unlimited. *Frazier*, 296 Kan. at 748.

To prevent future disputes in calculating Thomas' income, the parties stipulated that his gross domestic income would be set at a minimum of $75,000 when considering future child support modifications. The provision of the Agreement reads as follows:

> "Stipulations as to Husband's Income for Future Support Modification Purposes:  The parties agree and stipulate that for any and all future child support modification actions that the Husband's gross domestic income at the time of the child support modification shall be either Husband's gross domestic income at that time or the sum of $75,000.00, whichever is greater. The parties further stipulate and agree that the sole basis for Husband's gross domestic income to be determined to be less than the sum of $75,000.00 it would require the Court to determine that Husband is disabled or unable to be gainfully employed due to a serious injury or illness."

The KCSG provides the basis for establishing and reviewing child support orders, including cases settled by agreement of the parties. KCSG § I. (2019 Kan. S. Ct. R. 83); *In re Marriage of Brand*, 273 Kan. 346, 353, 44 P.3d 321 (2002). Judges and hearing officers must follow the guidelines and courts must consider all relevant evidence presented when setting an amount of child support. KCSG § I.

The KCSG allows income to be imputed to a party "in appropriate circumstances." KCSG § II.F.1. (2019 Kan. S. Ct. R. 86). The guidelines provide a nonexclusive list of five assumptions and appropriate circumstances for when a parties' income may be imputed:

1. Without substantial justification, it is assumed that a parent can earn at least the federal minimum wage and work 40 hours per week.
2. When a parent can work, but is deliberately unemployed.
3. When a parent is terminated from employment for misconduct.
4. When a parent receives significant in-kind payment or reimbursement from employment.

10

5. When a parent is deliberately underemployed to avoid child support. KCSG §§ II.F.1.a.-II.F.1.e.

Depending on the applicable circumstance, the guidelines impute income based on previous wages, occupation skills, federal minimum wage, value of in-kind payments, and potential earnings. KCSG § II.F.1.

In this case, the hearing officer and district court found the parties' stipulation that Thomas' gross domestic income would be at least $75,000 was against public policy and unenforceable. Instead of enforcing the stipulation, the hearing officer, after being informed of all the circumstances, imputed a wage of $52,500 for Thomas' income. Although this income was higher than Thomas' actual earnings as stated in his income tax returns, additional wages were imputed because Thomas was working less than 40 hours per week.

As mentioned earlier, parties to a divorce may not alter by agreement the amount of child support payments made to the parent with primary custody of the children. *Schoby*, 269 Kan. at 117. Even if the parties make an agreement for child support or for altering child support, the court maintains the power to modify the order in the best interests of the child: "The family court may always modify child support upon a proper showing of a change in either the child's needs or the supporting parent's financial ability." 2 Elrod, Kansas Law and Practice: Kansas Family Law § 14:30 (2018-2019 ed.).

The stipulation of Thomas' minimum income for calculating child support is a matter relating to support of his children. Accordingly, this provision was subject to the jurisdiction and control of the district court and the court could modify the order in the best interests of the children. K.S.A. 2018 Supp. 23-2712(a).

11

On appeal, Jaime contends the district court was bound by the stipulation of Thomas' minimum gross domestic income because no public policy prevents parties from agreeing they will make a minimum amount of income. Jaime also argues that the stipulation does "not necessarily reduc[e] the support to the children."

Identifying a parties' income when calculating child support depends on a factual analysis that is applied on a case-by-case basis. *In re Marriage of Matthews*, 40 Kan. App. 2d 422, 427, 193 P.3d 466 (2008). Typically, parties are bound to their stipulations. *State v. Stegman*, 41 Kan. App. 2d 568, 571, 203 P.3d 52 (2009). "Parties are obviously encouraged to enter into stipulations to avoid undue costs or time consuming litigation when there is no real dispute." *In re Care & Treatment of Ontiberos*, 295 Kan. 10, 35, 287 P.3d 855 (2012). On the other hand, a court is not bound by erroneous stipulations, admissions on questions of law, or the legal conclusions from admitted facts. *In re Adoption of A.A.T.*, 42 Kan. App. 2d 1, 7, 210 P.3d 640 (2006).

While the stipulation does not necessarily reduce the *total* child support amount, imputing a minimum annual income of $75,000 when Thomas does not earn that wage will always reduce Jaime's child support obligation below what would otherwise be proper under the guidelines.

A district court must follow the KCSG when calculating the amount of child support due. K.S.A. 2018 Supp. 23-3002(a). The guidelines include schedules that consider various data about income and expenditures to aid in properly assessing the income and expenditures involved in calculating child support. KCSG §§ II.B. and II.C. (2019 Kan. S. Ct. R. 84); KCSG § App. I (2019 Kan. S. Ct. R. 116); KCSG § App. II (2019 Kan. S. Ct. R. 118). The calculations of parental child support obligations under the guidelines creates a rebuttable presumption of a reasonable child support order. KCSG § I. Moreover, "[a]ny deviation from the amount of child support determined by

12

the use of the guidelines must be justified by written findings in the journal entry." *In re Marriage of Thurmond*, 265 Kan. 715, 716, 962 P.2d 1064 (1998).

Applying the stipulation and calculating Thomas' annual income at $75,000 when he does not, in fact, earn that amount results in an artificially lowered child support obligation for Jaime. For example, in this case the hearing officer calculated Thomas' domestic gross income at $48,791—the $52,500 imputed gross income minus $3,709 in reasonable business expenses. After computing child support and applying a parenting time adjustment, Jaime's child support obligation was set at $2,167 a month and Thomas' obligation was fixed at $1,239 a month. When using the same expenditures and parenting time adjustment but imputing to Thomas $75,000 annual domestic gross income, Jaime's child support obligation would be $2,065 a month and Thomas' obligation would be $1,618 a month.

Although applying the stipulation would result in a higher total child support obligation, this methodology violates public policy by reducing Jaime's child support obligation while envisioning that Thomas will pay the discrepancy in child support with a wage higher than he actually receives.

> "Child support has three purposes: (1) to protect the well-being of the child; (2) to enforce the social consensus that both parents have a support obligation; and (3) to limit the size of the gap between the child's standard of living and the higher standard of living of the support obligor." 2 Elrod, Kansas Law and Practice: Kansas Family Law § 14:1 (2018-2019 ed.).

In our view, the stipulation of Thomas' minimum gross domestic income violates the first and third purposes of child support.

First, the stipulation has the potential to harm the well-being of the children. If the stipulation was followed, Jaime would pay less in child support obligations. While

Thomas' portion of child support would be greater, the expectation that Thomas should provide this increased support is based on an overstated income not reflected in reality. As a consequence, the children could be placed in financial jeopardy because Jaime would pay less in child support, and Thomas—the child support obligee—would be unable to provide his portion of child support. Importantly, Kansas public policy prevents child support from being reduced by agreement of the parents. *Schoby*, 269 Kan. 114, Syl. ¶ 1. Although the guidelines allow income to be imputed in some instances, this is not an appropriate circumstance like those identified in KCSG § II.F.1.

Second, the stipulation also violates the purpose of child support to limit the size of the gap between the children's standard of living and the higher standard of living of the support obligor. Although the parties have shared residential custody, the children spend more time with Thomas. By reducing Jaime's support obligation and increasing Thomas' obligation with no corresponding increase in Thomas' income, the gap between the children's standard of living at Thomas' residence and the higher standard of living of the support obligor increases. A large gap in the wealth and standard of living between two parents may result in one parent having financial superiority over the other, leading to conflict between the parents and undue pressure on the child. See *In re Marriage of Wilson*, No. 104,830, 2011 WL 4717202, at *6-7 (Kan. App. 2011) (unpublished opinion); 2 Elrod, Kansas Law and Practice: Kansas Family Law § 14:12 (2018-2019 ed.).

In summary, the parties' stipulation that Thomas' gross domestic income would be set at a minimum of $75,000 when considering any child support modification is a matter relating to child support and, therefore, modifiable by the district court. Additionally, the stipulation was unenforceable as against public policy. We conclude that the district court did not err by refusing to enforce the stipulation.

APPLICATION OF THE EXTENDED INCOME FORMULA

Next, Jaime contends the district court erred in calculating child support by applying the extended income formula. According to Jaime, the district court failed to consider what support should be awarded above the highest amount on the child support schedules and, instead, automatically applied the extended income formula. Thomas responds that this issue is not properly raised for the first time on appeal.

Our court reviews a district court's order determining the amount of child support for an abuse of discretion, while the district court's interpretation and application of the KCSG is subject to unlimited review. *In re Marriage of Thomas*, 49 Kan. App. 2d 952, 954, 318 P.3d 672 (2014). A judicial action constitutes an abuse of discretion if (1) no reasonable person would take the view adopted by the trial court; (2) it is based on an error of law; or (3) it is based on an error of fact. *Wiles v. American Family Life Assurance Co.*, 302 Kan. 66, 74, 350 P.3d 1071 (2015). An abuse of discretion occurs if discretion is guided by an erroneous legal conclusion or goes outside the framework of or fails to consider proper statutory limitations or legal standards. See *Matson v. Kansas Dept. of Corrections,* 301 Kan. 654, 656, 346 P.3d 327 (2015). As the party asserting the district court abused its discretion, Jaime bears the burden of showing that error. See *Gannon v. State*, 305 Kan. 850, 868, 390 P.3d 461 (2017).

The KCSG contains schedules which use the parents' combined gross monthly income to index values of child support obligations. KCSG § App. II. If the combined income exceeds the highest amount shown on the schedules—$15,500 a month—the district court should exercise its discretion by considering what amount of child support should be set in addition to the highest amount on the schedule. KCSG § III.B.3. (2019 Kan. S. Ct. R. 88). To assist the court in this discretionary task, the guidelines include a specific formula at the end of each child support schedule showing how to compute incomes above the amounts reflected in the schedules. KCSG § App. II. This method of

15

calculating child support when parental monthly income exceeds the amounts in the schedules is the extended income formula.

During the hearing conducted by the hearing officer on Thomas' motion to modify child support, neither party discussed whether the extended income formula should apply or whether support above the highest amount on the schedule should be awarded. The hearing officer filed a journal entry with an attached child support worksheet that Thomas prepared. The worksheet revealed that the hearing officer used the extended income formula in calculating Jaime's $2,167 monthly child support obligation. There was no explanation, however, regarding the hearing officer's decision to employ the extended income formula.

After the journal entry was filed, Jaime moved for review by the district court. In her motion for review, Jaime claimed the hearing officer erred by applying the extended income formula without considering the best interests of the children. The district court affirmed the hearing officer's child support ruling without discussing Jaime's argument regarding application of the extended income formula.

Issues not raised before the hearing officer may not be raised on appeal. *Mid-West Painting, Inc. v. State Employment Security Bd. of Review*, 26 Kan. App. 2d 266, 269, 984 P.2d 146 (1999). Jaime argues that she objected to the use of the extended income formula "the instant the subject arose" in her motion for review.

Contrary to Jaime's assertion, however, the issue of whether the extended income formula should be applied in calculating child support was evident during the proceedings before the hearing officer. In her answer to Thomas' motion to modify child support, Jaime suggested the combined parental monthly income was above the highest amount on the schedules. And during the hearing on Thomas' motion, both parties acknowledged that the combined parental monthly income was above $17,000 and above

16

the highest amount listed on the schedules. Although it was apparent that under the circumstances the extended income formula was a factor in the child support modification dispute, Jaime failed to raise this issue before the hearing officer.

Moreover, a party must object to inadequate findings and conclusions of law to preserve an issue for appeal. Such an objection necessarily affords the lower court with an opportunity to correct any claimed inadequacies. *McIntyre v. State*, 305 Kan. 616, 618, 385 P.3d 930 (2016). When no objection is made, an appellate court may presume the lower court found all facts necessary to support its judgment. *State v. Dern*, 303 Kan. 384, 394, 362 P.3d 566 (2015).

Thomas sent a proposed journal entry to Jaime under Supreme Court Rule 170 (2019 Kan. S. Ct. R. 222), which used the extended income formula to calculate the parties' child support obligations. Jaime did not object to the proposed journal entry and the hearing officer signed and filed it. As a result, Jaime failed to preserve this issue for appeal. See *Burcham v. Unison Bancorp, Inc.*, 276 Kan. 393, 402-03, 77 P.3d 130 (2003); *In re Estate of Lentz*, No. 118,307, 2019 WL 494098, at *8-9 (Kan. App. 2019) (unpublished opinion), *petition for rev. filed* March 8, 2019. Accordingly, we decline to review this issue.

ATTORNEY FEES

Jaime also contends the district court erred by not awarding her attorney fees as provided by the Agreement. Thomas responds that Jaime was not entitled to attorney fees because she was not the prevailing party.

A court may not award attorney fees absent statutory authority or an agreement by the parties. *Snider v. American Family Mut. Ins. Co.*, 297 Kan. 157, 162, 298 P.3d 1120 (2013). Whether the district court has the authority to award attorney fees is a question of

law subject to unlimited review. *Rinehart v. Morton Buildings, Inc.*, 297 Kan. 926, 942, 305 P.3d 622 (2013). Additionally, this court exercises unlimited review over the interpretation and legal effect of written instruments. *Prairie Land Elec. Co-op v. Kansas Elec. Power Co-op*, 299 Kan. 360, 366, 323 P.3d 1270 (2014).

In the Agreement, Thomas and Jaime agreed that, in an action for breach of the Agreement, the prevailing party may recover reasonable attorney fees and litigation costs. The provision stated in relevant part:

> "**Breach of this Agreement and Attorney Fees.** In the event that either party to this Agreement brings an action for failure to perform any of the obligations imposed by the Agreement on him or her, or for enforcement or clarification of the Agreement, the prevailing party in such action shall have the right to recover his or her reasonable attorney's fees and litigation costs reasonably expended in prosecuting or defending the action."

The problem with Jaime's argument is two-fold. First, neither party brought an action for enforcement, breach, or clarification of the Agreement. Instead, Thomas filed an action to modify child support and Jaime invoked provisions in the Agreement to defend against the modification action. As a result, this litigation did not trigger the provision mandating payment of attorney fees.

Second, Jaime was not entitled to attorney fees under this provision because she is not the "prevailing party" in the action. "With respect to the specific question of attorney fees, it has been stated a prevailing party is the person who has an affirmative judgment rendered in his or her favor at the conclusion of the entire case." *Curo Enterprises v. Dunes Residential Services, Inc.*, 51 Kan. App. 2d 77, Syl. ¶ 6, 342 P.3d 948 (2015). In other words, the party in whose favor the decision or verdict is rendered and judgment entered is the prevailing party.

18

As discussed in this opinion, Jaime did not prevail before the hearing officer or the district court. Because she was not the prevailing party, she was not entitled to attorney fees under the Agreement's provision.

After oral arguments, Jaime also filed a motion for appellate attorney fees under Supreme Court Rule 7.07(b) (2019 Kan. S. Ct. R. 50). Thomas filed a response opposing the motion. Supreme Court Rule 7.07(b)(1) (2019 Kan. S. Ct. R. 51) generally provides that an appellate court "may award attorney fees for services on appeal in a case in which the district court had authority to award attorney fees." Additionally, our Supreme Court has stated: "Rule 7.07(b) applies to all requests for attorney fees related to an appeal, whether authorized under . . . [a] statute, or by an agreement between the parties." *Snider*, 297 Kan. at 163. Jaime asserts the Agreement's attorney fees provision and K.S.A. 2018 Supp. 23-2715, both permit our court to award her attorney fees related to this appeal.

As we have just discussed above we are persuaded that the Agreement did not provide a basis for Jaime to recover her attorney fees in this litigation. The terms of the attorney fees provision do not permit an award of attorney fees under the circumstances, and regardless, Jaime did not prevail on appeal. Finally, while attorney fees may be awarded "as justice and equity require" under K.S.A. 2018 Supp. 23-2715, given our holding, we are unable to make those findings in order to award Jaime appellate attorney fees in this case. Accordingly, Jaime's motion for an award of appellate attorney fees is denied.

IMPUTATION OF $52,500 AS THOMAS' GROSS INCOME

Finally, in his appellee's brief, Thomas asks our court to find that the hearing officer and district court erred when they arbitrarily imputed a wage of $52,500 per year as Thomas' gross income for purposes of calculating child support. This figure represents the difference between the $30,000 and $75,000 amounts that Thomas and Jaime

submitted as appropriate income figures. Thomas asserts the hearing officer and district court "should have accepted the only evidence presented, his 2014 income tax return showing an adjusted gross income of $24,243.00 and his 2015 income tax return showing an adjusted gross income of $28,353[.]00." Jaime responds that this court lacks jurisdiction over this issue because Thomas failed to cross-appeal the district court's order.

Whether jurisdiction exists is a question of law over which this court's scope of review is unlimited. *In re Care & Treatment of Emerson*, 306 Kan. 30, 34, 392 P.3d 82 (2017). K.S.A. 2018 Supp. 60-2103(h) requires an appellee to file a notice of cross-appeal from adverse rulings to obtain appellate review of those issues. *Lumry v. State*, 305 Kan. 545, 553-54, 385 P.3d 479 (2016). If an appellee fails to file a cross-appeal, the issue is not properly before the appellate court and may not be considered. *Cooke v. Gillespie*, 285 Kan. 748, 755, 176 P.3d 144 (2008).

Thomas' failure to pursue a cross-appeal creates a jurisdictional bar preventing our court from reviewing the district court's decision imputing a wage of $52,500 per year as Thomas' gross income for purposes of calculating child support. See *Lumry*, 305 Kan. at 555. This issue is dismissed.

Affirmed in part and dismissed in part. Motion for appellate attorney fees is denied.